**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**LARRY SQUIRES,**

     **Plaintiff,**

**vs.**                                                                      **CASE NO. 1:02CV82-MMP/AK**

**ANTHONY J. PRINCIPI, et al.,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on the motion of the Defendants, United States of America, and Anthony J. Principi, Secretary of the Department of Veterans Affairs, for summary judgment. Doc. 108. Plaintiff has responded to the motion. Doc. 126. In compliance with the Court's order, Doc. 135, Defendants filed a separate statement of undisputed facts, Doc. 139, and Plaintiff has responded thereto. Doc. 143. Plaintiff has also requested an order compelling these Defendants to respond to certain discovery, Doc. 105, to which Defendants have responded. Doc. 109. Having carefully considered the matter, the Court recommends that Defendants' motion be granted.

Case 1:02-cv-00082-MP-AK   Document 156   Filed 03/14/05   Page 2 of 22

Page 2 of 22

## BACKGROUND

The Plaintiff, Larry Squires, was a probationary police officer for the Department of Veterans Affairs assigned to the VA Daytona Beach Outpatient Clinic, Daytona Beach, Florida, when he was terminated from employment on November 3, 2000. The official reasons for Plaintiff's termination were stated in a letter dated October 30, 2000:

> The Service Chief, Police and Security Service [Robert E. Owen], has recommended for the efficiency of the Service, that you be terminated from your position of Police Officer, GS-0083-06, based on the following:
>
> a. On the evening of October 26, 2000, you were arrested on a charge of Battery resulting in injury to a co-worker [Dr. Catherine A. Darling]. An internal administrative complaint was also filed by the co-worker upon her arrival at the clinic on the morning of October 27, 2000, at which time photographs of the injury were taken.
>
> b. Your position as a Police Officer requires that you maintain a higher standard of ethical behavior. Conduct such as that described above will not be tolerated.

Doc. 108, Ex. A at Ex. 5. Plaintiff was advised that he could appeal his termination on the basis of age, race, color, or sex discrimination "no later than 45 calendar days after the effective date of this action." *Id.*

Plaintiff's first contact with an EEO counselor was on August 6, 2001. When asked to explain his failure to contact the counselor earlier, Plaintiff responded to the counselor as follows:

> I asked Mr. Squires why he waited almost a year to file his complaint. He said he did not know what information was correct. The discharge letter indicated he could appeal within 45 calendar days, but since there were other errors in the letter, he did not know if the reference to the 45-day time frame was true. I asked Mr. Squires if he had received EEO training as a VA employee. He responded that he thought he had the training when he was sent to Little Rock for Police training, and may have heard about the 45-days, but he didn't pay a lot of attention at the time.

**No. 1:02CV82-MMP/AK**

Mr. Squires said he had been told he had 300 days to file a complaint.  I asked Mr. Squires who told him he had 300 days to file a complaint.  He explained that the unemployment office told him this.  He said he did not know there was a difference between federal and private sector EEO complaints.  He also stated that his supervisor, Captain Gordon, told him, "After this is all over, we can look into getting your job back."  Mr. Squires said this statement made him believe that he could get his job back after an investigation was completed.

Doc. 126, Ex. E.  The bases for his contact with the counselor were sex, race, color, and age.  *Id.*  Plaintiff's official complaint with EEO was made on September 21, 2001.

Doc. 108, Ex. K.  At that time, he charged that he was terminated based on his sex, age, and color.  *Id.*  The regional EEO officer determined that Plaintiff's claim should be dismissed:

A review of the complaint file shows that you received training of the **EEO Complaint Process** on 1/8/00, 2/29/00, 6/25-30/00 and 8/25/00, during employee training sessions bot at the NF/SGVHS and at the VA Police Academy.  At the same time you received copies of the **Policy on the Prevention of Sexual Harassment, the leaflet: ORM EEO Complaint Process, and the ORM poster: How to Contact an EEO Counselor**. The records show that your first contact with the EEO counselor, Ms. Greene, was on 8/6/01, almost nine (9) months after your termination during your probationary period.  The record also shows that even though your termination letter advised you that if you feel that your termination was due to discrimination you had 45 days to process your complaint, you failed to comply with this directive.

* * *

Since you have been trained in EEO matters, we believe that you were fully aware of your rights and responsibilities including the time requirements for filing an EEO complaint (i.e., you either knew or reasonably should have known of the time limits) and the requirement to bring all matters to the attention of an EEO counselor.  Accordingly, *since you never sought EEO counseling on this claim and your initial contact with the EEO counselor was nine months after the occurrence*, it is our decision to **dismiss** your complaint for failure to comply with the *time limits of the EEO process, and/or to discuss with an EEO counselor*.

**No. 1:02CV82-MMP/AK**

*Id.* (emphasis in original).

Plaintiff appealed that decision to the EEOC, which affirmed the agency decision

on March 28, 2002, finding:

> EEOC Regulation 29 C.F.R. § 1614.105(a)(1) requires that complaints of discrimination should be brought to the attention of the Equal Employment Opportunity Counselor within forty-five (45) days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within forty-five (45) days of the effective date of the action.  The Commission has adopted a "reasonable suspicion" standard (as opposed so a "supportive facts" standard) to determine when the forty-five (45) day limitation period is triggered....Thus, the time limitation is not triggered until a complainant reasonably suspects discrimination, but before all the facts that support a charge of discrimination have become apparent.
>
> EEOC Regulations provide that the agency or the Commission shall extend the time limits when the individual shows that he was not notified of the time limits and was not otherwise aware of them, that he did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he was prevented by circumstances beyond his control from contacting the Counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.
>
> Here, complainant waited well beyond the forty-five-day time period to contact the EEO office regarding his termination.  The Commission notes that when the EEO Counselor asked complainant why he waited almost a year, complainant stated that he did not know what information in his termination letter was correct.  Since the letter did contain some misinformation, complainant contended that he did not know that the reference to the forty-five days was true.  Moreover, complainant told the EEO counselor that he had been told that he had 300 days to file a complaint.  Lastly, complainant believed that he would receive his job back after an investigation.  The Commission finds, however, that complainant was on notice of the forty-five-day time limit for initiating EEO contact.  Since complainant has not provided sufficient reason for tolling or extending the time limitation, the Commission finds that the complaint was properly dismissed for untimely counselor contact.

**No. 1:02CV82-MMP/AK**

Doc. 37, Attachment.[1]

Plaintiff is a white male, and at the time of his termination, he was twenty-nine years old.

## DISCUSSION

I.      Legal standards governing motion for summary judgment.

On a motion for summary judgment, Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). If they do so, the burden shifts to Plaintiffs to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id*. Plaintiffs must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986), and a mere "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986). However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor." *WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

---

[1]This document is not attached to the Fifth Amended Complaint. *See* Doc. 127. However, in this Court's estimation, this is of no consequence on this occasion for several reasons. First, Defendants requested summary judgment based on the Fourth Amended Complaint before the Court allowed the filing of the Fifth Amended Complaint. At the time the Court allowed Plaintiff to amend his complaint for the final time so that he could clarify his allegations against Defendant Catherine Darling, it carefully forbade him to amend any allegations against instant Defendants, and he complied with the directions. *See*, *e.g.*, Doc. 127 at 2.

**No. 1:02CV82-MMP/AK**

"Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by

[his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions

on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Owen*

*v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied*, 522 U.S. 1126

(1998)(quoting *Celotex*, 477 U.S. at 324).  The nonmoving party need not produce

evidence in a form that would be admissible at trial, as Rule 56(e) permits opposition to

a summary judgment motion by any of the kinds of evidentiary materials listed in Rule

56©).  *Owen*, 117 F.3d at 1236.

II.     Title VII.

"A federal employee must pursue and exhaust [his] administrative remedies as

a...prerequisite to filing a Title VII action."[2]  *Crawford v. Babbitt*, 186 F.3d 1322, 1326

(11th Cir. 1999).  This is "a condition to the waiver of sovereign immunity and thus must

be strictly construed."  *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 94 (1990).

"The first step in filing an EEOC complaint is that an aggrieved [federal]

employee must contact an agency EEO counselor within 45 days of the alleged

discriminatory conduct requesting informal counseling."  *Ramsey v. Henderson*, 286

F.3d 264, 269 (5th Cir. 2002).  Specifically, the applicable regulation states:

> (a) Aggrieved persons who believe they have been discriminated against
> on the basis of race, color...sex...[or] age...must consult a Counselor prior
> to filing a complaint in order to try to informally resolve the matter.

---

[2]*Crawford* uses the phrase "jurisdictional prerequisite."  However, it is clear that
filing deadlines in Title VII cases are not "jurisdictional" prerequisites but rather are more
akin to statutes of limitations.  *See National R.R. Passenger Corp v. Morgan*, 536 U.S.
101, 121 (2002).  Defendants agree with this approach.  *See* Doc. 108 at 8.

**No. 1:02CV82-MMP/AK**

> (1) An aggrieved person must initiate contact with a Counselor within 45
> days of the date of the matter alleged to be discriminatory or, in the case
> of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105.  In Title VII cases, to determine the triggering of the limitations

period, "'the proper focus is on the time of the *discriminatory act*, not the point at which

the *consequences* of the act become painful.'" *Pearson v. Macon-Bibb County Hospital

Authority*, 952 F.2d 1274, 1279 (11th Cir. 1992) (citation omitted) (emphasis in original).

The deadline for contacting the counselor is nevertheless subject to "waiver,

estoppel, and equitable tolling 'when equity so requires.'" *National R.R. Passenger

Corp. v. Morgan*, 536 U.S. 101, 121 (2002); *Bryant v. U.S. Department of Agriculture*,

967 F.2d 501, 504 (11th Cir. 1992).  The regulation itself provides for extension of the

45-day time limit

> when the individual shows that he...was not notified of the time limits and
> was not otherwise aware of them, that he...did not know and reasonably
> should not have known that the discriminatory matter or personnel action
> occurred, that despite due diligence he...was prevented by circumstances
> beyond his...control from contacting the counselor within the time limits, or
> for other reasons considered sufficient by the agency or the Commission.

§ 1614.105(a)(2).  However, "[f]ederal courts have typically extended equitable relief

only sparingly," for example, "where the complainant has been induced or tricked by his

adversary's misconduct into allowing the filing deadline to pass."  *Irwin*, 498 U.S. at 96.

Plaintiff does not, and cannot, dispute that he received "equal employment

opportunity training, discrimination training" or that there were EEO posters displayed in

the Daytona Beach clinic.  Doc. 108, Ex. C at 16-17 & 19.  He also cannot dispute that

he was unequivocally advised of the 45-day deadline in the letter terminating his

employment.  Rather, Plaintiff argues that his failure to act within the 45-day time period

**No. 1:02CV82-MMP/AK**

should be excused because he did not "discover [he] had been discriminated against" until "all allegations from Darling" were "resolved" on June 8, 2001.  Doc. 126, Ex. A at 14-15.  He also suggests that Defendants lulled him into inaction, "[p]lacating his concerns" by telling him he could petition for re-employment when the charges against him were resolved.  Doc. 126, Ex. A at 11.

Even if the Court were to give Plaintiff the benefit of "all doubt," not just the "reasonable doubt" contemplated by summary judgment case law, and used June 8, 2001, as the outside date for commencing the 45-day contact deadline, Defendants would still be entitled to summary judgment on Plaintiff's Title VII claim, as even then the deadline had expired before Plaintiff made initial contact with the counselor on August 6, 2001.  The Court does not believe, however, that, in light of the evidence presented, this is the proper starting point for calculating the commencement of the 45-day period.  Rather, the appropriate date, in this Court's view, is no later than November 3, 2000, the effective date of Plaintiff's termination.  The Court reaches this conclusion after a thorough review of the record.

In his amended pleadings, Plaintiff charges that he was discriminated against because of his sex,[3] or, in his words, because of "gender-based animus."  The events leading up to Plaintiff's termination involved an incident between Plaintiff and Defendant

---

[3]Although Plaintiff raised age and race claims before the EEOC, he has not carried those allegations forward in his complaints.  Plaintiff makes absolutely no mention of race anywhere in the relevant pleadings or in his evidence presented in opposition to Defendants' motion for summary judgment, and thus, there is no race claim before the Court.  Furthermore, as he was well under the age of 40 at the time of these events, Plaintiff is clearly not within the group protected by the Age Discrimination in Employment Act.

**No. 1:02CV82-MMP/AK**

Catherine Darling which occurred on the evening of October 26, 2000, at Darling's residence.  On the following morning, Darling complained to VA police about Plaintiff, and when Plaintiff was questioned about the incident, he demanded an investigation be initiated, that witness statements or reports of contact be secured "from several employees whom Darling had been presenting, for several weeks, with tales of harassment and abuse from [Plaintiff]," and that "charges be brought against Darling." Doc. 37 at 9.  At that time, Milton Gordon, the Assistant Chief of Police Services, "made accusatory remarks founded on the sex of [Plaintiff] and Darling (i.e. 'You're a young man.  You have to learn to be a little more gentle with the ladies'...)."  *Id.*

Plaintiff further complained that on October 27, 2000,

> Dawn Bourchard, a female employee...assaulted [Plaintiff], threatening to make certain to see [Plaintiff] "eating through a straw."  When Plaintiff reported the incident upon being dismissed that morning, Sgt. James Aldridge (VA Police) asked Bourchard to submit a Report of Contact...in accordance with VA Policy.  Aldridge did not receive a ROC from Bourchard, nor follow-up to request another ROC from Bourchard.[4]

> [Defendants] did not ask [Plaintiff] for a ROC pertaining to the incident with Bourchard.

> Bourchard did not face any adverse personnel action on account of her behavior.

> Due to a gender-based animus, [Defendants] failed to adequately investigate threats made to [Plaintiff] by Dawn Bourchard, clearly evidencing the prejudicial treatment afforded Bourchard–a female, in contradistinction to the hostile and discriminatory treatment of [Plaintiff]–a male.

---

[4]A Uniform Offense Report was prepared by VA Police, and Ms. Bourchard was questioned about the incident.  *See* Doc. 108, Ex. E at Ex. 5.

**No. 1:02CV82-MMP/AK**

*Id.* at 10.

In his Declaration submitted in opposition to the motion for summary judgment,

Plaintiff maintains:

> During the time period before my termination, [Defendants] fostered a
> hostile work environment prejudicing my ability to properly respond to
> allegations of harassment in the workplace, allegations of violence in the
> workplace, and allegations of aggressive and confrontational application of
> the federal laws, rules, and regulations, promulgating an employment
> environment in which female employees were afforded preferential
> treatment due to gender-based animus, and I was disparagingly treated in
> a discriminatory, hostile, and retaliatory manner.

Doc. 126, Ex. A at 17.

When synthesized, the gist of Plaintiff's sex discrimination claims is (1) that he

was treated differently than either Darling or Bouchard merely because he is a man, and

(2) that he was subjected to a hostile work environment which favored women over

men.  Plaintiff became "quite sure, quite certain" that he had been discriminated against

based on his sex after he learned that Owen referred to Defendant Darling as "a

minority female" during the informal EEO counseling process.  Doc. 108, Ex. C at 57;

*see also* Doc. 126, Ex. E.  In Plaintiff's words, "[F]rom the whole context of that

statement was his reference to her as a female minority and that's why they were so

compelled to react the way they did.  That was their justification for firing me."  Doc.

108, Ex. C at 57.

All of the acts to which Plaintiff points as evidence of sex

discrimination–excepting one--plainly pre-date the effective date of his termination and

were, in and of themselves, sufficient to put Plaintiff on notice that he may have been

terminated because of his sex.  Though the evidence which post-dates Plaintiff's

**No. 1:02CV82-MMP/AK**

termination, i.e., Owen's reference to Darling as a "minority female," may be an

additional act of discrimination, it was not one of the triggering discriminatory acts,

which occurred, according to Plaintiff himself, when (1) Gordon made the allegedly

gender-based comment on or about October 27, 2000, (2) no action was taken against

Darling for filing an allegedly perjurious complaint against Plaintiff; (3) no action was

taken against Bouchard when she allegedly threatened Plaintiff with physical harm; and

(4) Defendants created an environment which was openly hostile to Plaintiff as a man

and prejudicial to his complaints of disparate disciplinary treatment.

The Court is also convinced that Plaintiff has not presented sufficient evidence to

warrant equitably tolling or waiving the 45-day contact deadline.  Defendants did not

conceal the deadline from him and, in this Court's view, they did not engage in any

misconduct which would have "induced or tricked," *Irwin*, 498 U.S. at 96, Plaintiff into

allowing the contact deadline to pass.  The only action on Defendants' part which

reasonably could be viewed as even approaching the concerns of *Irwin* is Plaintiff's

allegation that Defendants advised him that he could petition for re-employment "once

the allegations were resolved."  Doc. 126, Ex. A at 10.  However, Plaintiff knew by

March, 2001, that Owen and Gordon were not conducting any investigation

"surrounding [Plaintiff's] termination," *id.* at 14, and thus, by the time the "allegations

were resolved" on June 8, 2001, Plaintiff had more than sufficient information, even

without Owen's statement to the counselor, to put him on notice that his gender may

have been a motivating factor in his termination and that the 45-day deadline was

running.  By waiting an additional 59 days after "the allegations were resolved" before

**No. 1:02CV82-MMP/AK**

contacting the counselor, Plaintiff allowed the contact deadline to expire by two weeks

before he took any action, and Owen's statement did not act to revive the deadline once

it expired, as Plaintiff had clearly contemplated gender discrimination as a cause for his

termination when he entered the informal counseling process.  *See* Doc. 126, Ex. E.

Because Plaintiff failed to timely exhaust his administrative remedies, his Title VII

claim must fail, and there is no reason to consider the alternative grounds presented by

Defendants for the entry of summary judgment.

III.     Federal Tort Claims Act (FTCA).

Under the FTCA, the United States "may be held liable for the negligent conduct

of its employees 'in the same manner and to the same extent as a private individual

under like circumstances.'" *Pate v. Oakwood Mobile Homes, Inc.*, 374 F.3d 1081, 1083

(11th Cir. 2004) (quoting 28 U.S.C. § 2674)).  "The FCA was not intended to create new

causes of action; nor was it intended as a means to enforce statutory duties.  Instead,

Congress's chief intent in drafting the FCA was simply to provide redress for ordinary

torts recognized by state law."  *Howell v. United States*, 932 F.2d 915, 917(11th Cir.

1991).

In his Fourth Amended Complaint, Plaintiff charges that Defendants "knowingly,

fraudulently provided false statements and omitted statements during administrative and

law enforcement investigations into the allegations from...Dr. Catherine Darling, which

led to [his] termination...."  Doc. 37 at 6.  Plaintiff maintains that he "suffered a complete

defamation of character, exacerbated by an incomplete and fraudulent investigation,*" id.*

at 11, and that "fraudulent statements and documents were contrived *post facto*...."  *Id.*

**No. 1:02CV82-MMP/AK**

at 13.  He also alleges that Defendants are liable to him for "outrageous conduct, under an abuse of process which subjected [him] to wrongful termination and defamation" based on the use of "false and fraudulent statements" and Defendants' improper and inadequate investigation of Darling's allegations.  *Id.* at 21.

Defendants seek summary judgment based on several grounds, each of which will be considered in turn.[5]

A.     Preemption.

"Federal employees are generally precluded from bringing claims against the government when the claims arise 'out of an employment relationship that is governed by comprehensive procedural and substantive provisions' which provide meaningful remedies against the United States."  *Nevarez v. United States*, 957 F. Supp. 884, 890 (W.D. Tex. 1997) (quoting *Bush v. Lucas*, 462 U.S. 367, 368 (1983)).  The Civil Service Reform Act (CSRA) "affords such remedies to federal employees," *Nevarez*, 957 F. Supp. at 890, as it provides "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."  *United States v. Fausto*, 484 U.S. 439, 445 (1988).  The CSRA specifically authorizes a federal employee to challenge a supervisor's "prohibited personnel practices."  5 U.S.C. § 2302.

---

[5]One of the grounds raised by Defendants for summary judgment on the FCA claims is that Plaintiff did not seek redress under the FCA in this Court until July 2, 2003, approximately three weeks after the time for filing suit had expired.  Doc. 108 at 20.  This basis for relief is without merit, as Plaintiff's Third Amended Complaint, in which he first alleged a cause of action pursuant to the FCA, was filed on February 21, 2003, clearly within the six-month period afforded a complainant after the denial of an administrative claim.  *See* Docs. 32 & 108, Ex. M.

**No. 1:02CV82-MMP/AK**

"It is founded on certain merit-system principles that govern civil service employment and provides that employees are to be treated fairly and equitably and 'with proper regard for their privacy and constitutional rights.'" *Nevarez*, 957 F. Supp. at 890 (quoting 5 U.S.C. § 2301(b)(2)).  The CSRA "preempts federal claims that fall within its scope even when the statute provides no alternative remedy."  *Orsay v. United States Department of Justice*, 289 F.3d 1125, 1128-29 (9th Cir. 2002).

Defendants maintain that because the "essence of Plaintiff's FCA claim is that the VA improperly investigated the allegations of Dr. Darling, resulting in Plaintiff's termination," his claims are barred by the CSRA.  Doc. 108 at 18.  Defendants base this claim, in part, on Plaintiff's repeated allegations that the VA violated "Prohibited Personnel Practices codified under 5 U.S.C. § 2302."  *Id.* at 19; *see also* Doc. 37 at 22 & 27-29. Plaintiff counters that he has not "sought to assert a claim under the CSRA" or under the Code of Federal Regulations but rather has cited to the CSRA and the C.F.R. as "relevant background evidence of nonfeasance, misfeasance, or malfeasance in relation to the claims brought under...the FCA."  Doc. 126 at 18.

Under the CSRA, termination is a "personnel action."  *See* 5 U.S.C. § 2302(a)(2)(A).  The question is whether the acts which Plaintiff alleges that Defendants took in terminating his employment are "prohibited personnel practices" under the CSRA.  Despite Plaintiff's attempt to distance himself from the allegations of his complaint, he has clearly demonstrated to the Court how, taking the evidence in the light most favorable to him, Defendants' conduct fits within the CSRA's definition of "prohibited personnel practices."  For example, according to Plaintiff, Defendants'

No. 1:02CV82-MMP/AK

"contriv[ance]" of an "incomplete and impartial and fraudulent investigation" violated the prohibition in § 2302(b)(4) against "deceiv[ing] or willfully obstruct[ing] any person with respect to such person's right to compete for employment." *See* Doc. 37 at 27-28. Furthermore, in Plaintiff's view, the failure of the VA to "take action against Dr. Darling for gross violations of state and federal law" after he told them she had filed a "fraudulent affidavit," violated § 2302(b)(6) and (b)(8)(A). *See id.* at 28. Subsection (b)(6) prohibits granting any unauthorized preference or advantage to any employee "for the purpose of improving or injuring the prospects of any particular person for employment," while subsection (b)(8)(A) prohibits taking or failing to take personnel action because of "any disclosure of information by an employee...which the employee...reasonably believes evidences (I) a violation of any law, rule, or regulation or (ii) gross mismanagement...[or] an abuse of authority...."

Although the Court accepts Plaintiff's assertion that he is not seeking relief pursuant to the CSRA, the Court cannot simply ignore Plaintiff's characterization of Defendants' actions as "prohibited personnel practices" without attaching to that characterization the consequences of preemption. At the very least, Plaintiff's repeated assertions (1) that, in effecting his termination, Defendants lied and perjured themselves, (2) that they defamed him during the course of an "incomplete and fraudulent investigation," and (3) that their abuse of process led to his wrongful termination illustrate how Defendants' conduct, as alleged by Plaintiff, "transgress[ed] the law's merit system principles–merit system principles which require the federal sovereign to treat its employees fairly and shield them from capricious actions, personal

No. 1:02CV82-MMP/AK

vendettas, favoritism, and the like." *Roth v. United States*, 952 F.2d 611, 614 (1st Cir. 1991). Therefore, because Plaintiff's FCA claims arise out of his employment relationship with the VA, they are preempted by the CSRA, and Plaintiff is precluded from pursuing these claims.[6]

      B.     Immunity not waived.

As noted *supra*, under the FCA, the United States may, in some circumstances, be held liable for the negligent conduct of its employees. Specifically excluded from this waiver of sovereign immunity, however, is any claim "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights...." 28 U.S.C. § 2680(h). These exclusions come with the proviso that "with regard to acts or omissions of investigative or law enforcement officers of the United States Government," a claim "arising...out of...abuse of process" is actionable. *Id.* An investigative or law enforcement officer "means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id*.

To the extent that Plaintiff's defamation claim is not preempted by the CSRA, it is clearly excluded from consideration by the intentional tort exception to the FCA for libel

---

[6]Plaintiff has also raised due process and equal protection claims in his complaint. *See* Doc. 37 at 21-22. These are also preempted by the CSRA. *See Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir. 1992) (allegation that supervisor violated freedom of association falls within "'catch-all' prohibition on personnel actions violating CSRA's merit system principles"). This applies equally to the privacy claim Plaintiff first raises in his response to the motion for summary judgment. Doc. 126 at 36. Even if the privacy claim were properly before the Court, it is preempted.

**No. 1:02CV82-MMP/AK**

and slander claims.  *See Nevarez*, 957 F. Supp. at 893.  With regard to his abuse of

process claim, Plaintiff argues that the claim should be allowed to proceed because "VA

officials were acting in the scope of duty, in a law enforcement capacity."  Doc. 126 at

39.  He bases this position on the fact that Owen and Gordon requested that the Volusia

County Sheriff's Office fax them a copy of the paperwork associated with Darling's

October 26 allegations against Plaintiff.  *See* Doc. 126, Ex. J.  In Plaintiff's view, Owen

and Gordon "knowingly and fraudulently" attempted to "mask the direct role they

assumed in the law enforcement investigation" by stating that the director of the

Daytona Beach facility had actually requested the reports.  Doc. 126 at 39.

Having carefully considered the matter, the Court finds Plaintiff's position

unpersuasive.  In *Orsay, see supra*, the plaintiffs, Deputy United States Marshals,

claimed that a supervisor with the United States Marshals Service had pointed a loaded

gun at them on a number of occasions and that consequently the United States was

liable under the FCA for assault and intentional infliction of emotional distress.[7]  289

F.3d at 1127. It was undisputed that the supervisor was an investigative or law

enforcement officer without the meaning of the FCA.  *Id.* at 1132-33.  The question

before the court was whether the plaintiffs' "claims of assault and intentional infliction of

emotional distress are claims 'arising out of assault' with respect to 'acts or omissions of

[an] investigative or law enforcement officer[ ].'" *Id.* at 1133.

---

[7]Like a claim arising out of abuse of process, a claim arising out of assault is
actionable under the FCA with respect to acts or omissions of an investigative or law
enforcement officer.  *See* 28 U.S.C. § 2680(h).

**No. 1:02CV82-MMP/AK**

The court found that the waiver of sovereign immunity in § 2680(h) "reaches only those claims asserting that the tort occurred in the course of investigative or law enforcement activities." *Id.* at 1136. In reaching this conclusion, the court reasoned:

> In section 2680(h), Congress refused to make the United States liable for certain intentional torts by federal employees, but created a limited exception to this refusal for the "acts and omissions of investigative or law enforcement officers." Congress' decision to single out investigative and law enforcement officers from other federal employees reflects a concern that these officers, unlike other federal employees, are authorized to use force and threaten government action when necessary to carry out their investigative and law enforcement duties. This authority to use force and threaten government action carries with it the risk of abuse, or the risk of intentionally tortious conduct. By singling out investigative and law enforcement officers in section 2680(h), Congress provided a remedy for this kind of intentionally tortious conduct that arises in the context of investigative and law enforcement activities. Congress did not create a remedy for torts arising outside of this context, like the workplace torts that [the plaintiffs] allege. To construe section 2680(h) otherwise–as reaching these workplace torts–would create an arbitrary distinction between investigative and law enforcement officers and other federal employees, and produce the bizarre result that suit lies against the United States when one federal law enforcement officer punches another in the office, but not when other federal employees engage in the same conduct.

*Id.* at 1134.

Because the plaintiffs did not allege that the supervisor "pointed a loaded gun at them in the context of investigative or law enforcement activities," their "FCA claims d[id] not come within the waiver of immunity provided in section 2680(h) for the acts and omissions of investigative and law enforcement officers" and the exception "for claims 'arising out of assault' therefore bar[red] [the plaintiffs'] FCA claims that [the supervisor's] conduct constituted assault and intentional infliction of emotional distress." *Id.* at 1136.

**No. 1:02CV82-MMP/AK**

In this case, Plaintiff attempts to bring his claim for abuse of process within the exception for investigative and law enforcement officers by arguing that Owen and Gordon were engaging in law enforcement activity when they investigated Darling's allegations in connection with her complaint to VA officials.  The Court cannot dispute that these officers were "investigating" the charges officially lodged by Dr. Darling against Plaintiff.  However, they were not assisting the Volusia County Sheriff's Office in their criminal investigation to determine whether Plaintiff was guilty beyond a reasonable doubt of those charges.  Rather, they were investigating the charges from the standpoint of a personnel matter.  Darling reported the alleged criminal incident to VA officials and also charged, in essence, that, Plaintiff was harassing her during work hours.  Owen was unequivocally within the perimeters of his supervisory position to gather information relevant to Darling's complaint to VA, including the incident report from the previous night, and then to evaluate Plaintiff's fitness to continue employment with the VA in light of that information.  This investigation was pertinent to resolving a personnel matter, not a law enforcement matter, and therefore, in this Court's view, Owen and Gordon were not acting in their "investigative or law enforcement" capacities as those terms are defined in or contemplated by the FCA.  Thus, to the extent that the abuse of process claim is not preempted by the CSRA, it too must fail.[8]

---

[8]Even if the abuse of process claim were not barred under the FCA, evidence of an essential element of such a claim is missing.  "Abuse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed."  *Bothman v. Harrington*, 458 So.2d 1163, 1169 (Fla. D. Ct. App. 1984).  *See also Hardick v. Homol*, 795 So.2d 1107, 1111 n.2 (Fla. D. Ct. App. 2001) (setting forth elements of abuse of process claim).  Instant Defendants took neither criminal nor civil action against Plaintiff.

**No. 1:02CV82-MMP/AK**

Finally, Defendants request summary judgment on Plaintiff's "negligent investigation claim."  Doc. 108 at 22.  According to Defendants,

> The gravamen of those allegations is that the VA's investigation into the Dr. Darling allegations cast him in a false light–that is, defamed him by making him appear to be the perpetrator of an assault when in fact he was innocent.  Plaintiff alleges that, from this false premise, there flowed a number of consequences, including his ultimate dismissal from the VA police force.  Because the negligent investigation claim arose out of the alleged defamation, it is barred by...Section 2680(h).

*Id.*  In their view, "the allegedly defamatory statements are essential to Plaintiff's claim.

Without the allegations of assault, there would have been no termination.  Plaintiff

alleges that had the VA conducted a proper investigation the defamatory (i.e. untrue)

nature of the allegations would have been revealed."  *Id.* at 22-23.

> Plaintiff maintains that his claims
>
> do not arise out of the defamatory acts of the Defendants, Owen and Gordon, which occurred in part, during the negligent investigation conducted in a law enforcement capacity.  Indeed, the acts, more than defamatory, rise to the level of fraud and perjury, and arise out of negligent and discriminatory acts, rising to the level of willful disregard and abuse of process.

Doc. 126 at 40-41.

Having carefully considered the matter, the Court finds that, as previously

discussed, this claim is plainly preempted by the CSRA.  An investigation into

allegations of workplace misconduct which culminates in termination of employment,

regardless of whether the investigation was negligently or fraudulently performed, is

undoubtably the type of personnel matter encompassed within the CSRA and its

"'catch-all prohibition on personnel actions violating the CSRA's merit system

principles."  *Ferry*, 954 F.2d at 661.

**No. 1:02CV82-MMP/AK**

## CONCLUSION

Having carefully considered the matter, the Court finds that there are no genuine issues of material fact and that the Defendants, United States of America and Anthony J. Principi, Secretary of the Department of Veterans Affairs, are entitled to judgment as a matter of law.  Consequently, Plaintiff's motion to compel discovery responses from these Defendants is not well taken.

In light of the foregoing, it is respectfully **RECOMMENDED:**

That the motion of the Defendants, United States of America and Anthony J. Principi, Secretary of the Department of Veterans Affairs, Doc. 108, be **GRANTED**;

That Plaintiff's motion to compel discovery from the Defendants, United States of America and Anthony J. Principi, Secretary of the Department of Veterans Affairs, Doc. 105, be **DENIED**;

That all claims against the Defendants, United States of America and Anthony J. Principi, Secretary of the Department of Veterans Affairs, be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this **14th** day of March, 2005.

**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**No. 1:02CV82-MMP/AK**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:02CV82-MMP/AK**