**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**LARRY SQUIRES,**

     **Plaintiff,**

**vs.**                                                   **CASE NO. 1:02CV82-MMP/AK**

**ANTHONY J. PRINCIPI, et al.,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on the motion of the United States of America to substitute it as the proper party in Count Two of Plaintiff's Fifth Amended Complaint. Doc. 145. The basis of the motion is that "this federal employee defendant has been sued for money damages in her individual capacity for ordinary or common law tort acts committed within the scope of her employment." *Id.* at 1. Plaintiff responded to the motion, Doc. 148, and the United States filed a reply. Doc. 151.

After initially considering the motion, the Court determined that the appropriate manner of handling this issue was to hold the motion in abeyance and to open a short period of written discovery for the limited purpose of developing the narrow issue of

whether Dr. Catherine Darling was acting within the scope of her employment with the VA when she filed the October and November, 2000, reports with VA police against Plaintiff.  Doc. 153.  The Court later clarified the perimeters of that discovery order and extended the deadlines.  Doc. 174.  Plaintiff has now filed a supplemental response to the motion to substitute, Doc. 175, and the time for filing a reply by the Government having passed without additional argument from it, the motion is now in a posture for decision.  Having carefully considered the matter, the Court recommends that the motion to substitute be granted.

## BACKGROUND

In compliance with the Court's prior order, Plaintiff filed his fifth amended complaint on February 17, 2004.  Doc. 127.  In Count Two, which is entitled "Defamation," Plaintiff charged that on October 27, 2000, the Defendant, Dr. Catherine Darling, "knowingly, willfully and maliciously made false statements and material misrepresentations, and filed false administrative and law enforcement complaints with the Department of Veterans' Affairs (VA), where both the Plaintiff and Darling were employed, suggesting that the Plaintiff was involved in the criminal conduct reported to the [Volusia County Sheriff]."  On that date, Darling told VA police that she had filed a complaint with the Volusia County Sheriff's Office based on an incident with Plaintiff at her private residence and that Plaintiff had consequently been charged with assault.  *Id.* at 21.  She also advised VA police that she intended to seek a restraining order against Plaintiff, as she was "'terrified of him and what he might do next.'"  *Id.* at 22.  She agreed to "'remain at the clinic due to the high workload of scheduled optometry patients'" when

No. 1:02CV82-MMP/AK

she was assured "'that [Plaintiff] would not be allowed to come near her.'" *Id.*  Darling

also charged that during the work day, Plaintiff "'would walk by and glare at her if she

could not talk to him at work, and that he was believed to be jealous of her two male co-

workers.'" *Id.*

According to Plaintiff, on November 24, 2000, Darling again "knowingly, willfully

and maliciously made false statements and material misrepresentations, and filed false

law enforcement complaints with the VA against the Plaintiff, alleging continued

harassment, stalking, and threatening phone calls."  *Id.*  On that occasion, Darling

complained to VA police that after she changed her home telephone number, Plaintiff

began "'calling her at work,'" *id.*, and that she had "'informed [Plaintiff] that she does not

wish to have any contact with him at all, personal or professional.'" *Id.*  The investigating

officer "informed Dr. Darling to report this to the local authorities for follow-up," and the

disposition indicates that the matter was referred "to outside law enforcement agency

for follow-up."  *Id.*

Plaintiff maintained that when Darling made these complaints to VA police she

"was not acting with the scope of duty at the VA," *id.*, and that he "was terminated from

employment with the VA as a result of the misrepresentations, false statements and

fraudulent complaints provided by Darling."  *Id.* at 23.

During the relevant time period, Darling was, according to Plaintiff, the Acting

Chief of Optometry at the Daytona Beach Outpatient Clinic in Daytona Beach, Florida.

*Id.* at 6.

**No. 1:02CV82-MMP/AK**

**DISCUSSION**

When a federal employee is sued for a wrongful or negligent act, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act") empowers the United States Attorney General, through the appropriate United States Attorney, to certify that the employee "was acting within the scope of [her]...employment at the time of the incident out of which the claim arose." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419 (1995) (quoting 28 U.S.C. § 2679(d)(1)).  Although "this scope certification is not dispositive for purposes of substitution, it indicates that the United States is substituted as an automatic consequence of the Attorney General's certification."  *S.J. & W. Ranch v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990). "Unless the plaintiff challenges the scope determination, the court is entitled to treat the Attorney General's certification as prima facie evidence that the employee conduct at issue occurred within the scope of the employment."  *Id.*  "[W]hether an employee's actions are within the scope of [her] employment for purposes of the [Westfall] Act is an issue governed by the law of the state where the incident occurred," *id.* at 1242, and is a question of law and fact which the court adjudicates *de novo. Id.* at 1442-43.  "[T]he plaintiff bears the burden of establishing that the challenged conduct exceeded the scope of employment...."  *Id.* at 1243.  In Florida,

> Conduct is within the scope of one's employment so as to be immune from an action for defamation if it is the type of conduct that the employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or required by the job, and the conduct is activated at least in part by the employee's purpose to serve...her employer.

*Thomas v. Tampa Bay Downs, Inc.*, 761 So.2d 401, 404 (Fla. Dist. Ct. App. 2000).

**No. 1:02CV82-MMP/AK**

In this case, the United States Attorney for the Northern District of Florida certified that "based on all the information now available with respect to the tort allegations made by the plaintiff in [Count Two] of his Fifth Amended Complaint...relating to Catherine Darling's reports to the Department of Veterans Affairs, defendant Catherine A. Darling was, at all times relevant, acting within the scope of her office or employment as an employee of the United States of America." Doc. 145, Scope of Office or Employment Certification. In response, Plaintiff essentially argues that because Darling's allegedly false complaints to VA police had their genesis in an "intense[ ] and intimate[ ] involve[ment]" between Plaintiff and Darling, she cannot have been acting within the scope of her employment when she advised police that she was afraid of Plaintiff and that Plaintiff was calling her during work hours. Doc. 148 at 4-5.

It is plainly Plaintiff's burden to prove that Darling acted outside the scope of her employment with the VA when she filed the October and November, 2000, reports with VA police against Plaintiff, and in his supplemental response, Plaintiff argues:

> It would be counterintuitive for [him] to **prove** the three *Thomas* elements. Rather, [he] shall disprove the three *Thomas* elements, which provide the standard for conduct **within** the scope of one's employment. (e.g., [Plaintiff] will prove that Darling's conduct was **without**, or outside the scope of employment.)

Doc. 175 at 4 n.3 (emphasis in original). Although the Court allowed Plaintiff an extension of time to complete written discovery on the scope of employment issue, Plaintiff "respectfully submit[ted] Supplemental Response to Motion to Substitute without further argument or additional discovery" on the basis that he did not consider written discovery "a viable means of attaining any information from the Defendants in light of

**No. 1:02CV82-MMP/AK**

the long history of evasive and deceitful acts underlying the present cause." *Id.* at 4-5 n.4.

With these matters in mind, the Court turns to a consideration of the *Thomas* factors. Plaintiff does not seriously dispute that Darling filed the subject VA reports during her hours of employment, thereby meeting the second *Thomas* factor, i.e., that the conduct occurred substantially within the time and space limits authorized or required by her job. He does, however, contest the first and third *Thomas* factors, arguing (1) that "Darling's position...did not require [or authorize] providing reports, of any kind, to VA administration or law enforcement," particularly not "malicious, back-biting, deceitful rumors to other employees," Doc. 175 at 6-7; and (2) that her "defamatory conduct was in no way activated by any interest to serve the VA." *Id.* at 2. The Government argues generally that "Plaintiff has failed to provide anything but bare allegations in support of his contention that...Darling was not acting in the scope of her employment when she reported the actions of the Plaintiff, a co-worker, to her employer."

The Court cannot dispute that reporting the actions of a co-worker is not among Dr. Darling's enumerated duties. *See* Doc. 175, Appendix at 16-17.[1] However, Plaintiff's argument that Darling's position at the VA did not require or authorize providing reports "of any kind" to administration or law enforcement is not, when read literally, a realistic view, for undoubtedly, Dr. Darling prepared, for example, routine reports of the medical treatments she provided to her patients. Read more broadly,

---

[1]Plaintiff did not number the pages of the attached Appendix, and the Court has undertaken that task for clarity.

**No. 1:02CV82-MMP/AK**

Plaintiff asks the Court to read this assertion to mean that Dr. Darling's job description did not include any duty to report allegedly false allegations of assault by a co-worker. This argument proves too much.  While an employee's job description would not ordinarily list a duty to report allegations against a co-worker, it is equally true that the scope of an employee's duties is not encompassed exclusively in her position description listing her assigned tasks.  Employers, including the VA, also impose duties and responsibilities on their employees through work rules, procedures, and prohibitions which are made known to employees through training, employee handbooks, and other directives.  Through these administrative mechanisms, employees are expressly put on notice that their assigned tasks are augmented by specific standards of conduct. Employee misfeasance and malfeasance are expressly defined, and employees are informed of the potential penalties, which could include dismissal.  Thus, the scope of an employee's duties would include those prohibiting employee theft or fraud, excessive use of force, racial discrimination, and sexual harassment.  Complying with these express employer requirements falls within the scope of each employee's duties, as does reporting violations of the same.

In this case, something happened off-duty between Plaintiff and Darling which prompted Dr. Darling to institute criminal proceedings against Plaintiff and to seek and obtain an injunction against him.  That much is indisputably true, and while this Court will, like the *Thomas* court, accept, for purposes of this motion, that the allegations underlying those proceedings were false and maliciously made, that does not mean that Dr. Darling was acting outside the scope of her employment when she reported to her

**No. 1:02CV82-MMP/AK**

superiors that she had filed criminal charges and was seeking injunctive relief against Plaintiff.  Indeed, in this Court's mind, Dr. Darling would have been ignoring a responsibility to her employer and to her patients if she had failed to inform the VA. Plaintiff was a VA police officer with all of its attendant responsibilities of safeguarding VA premises and providing protection to the patients and the staff, including Dr. Darling. It was well within the VA's legitimate managerial responsibilities to know of the antagonism between Dr. Darling and Plaintiff, and that Darling had taken legal steps against Plaintiff–even if those steps had no basis in fact--as this clearly affected staffing decisions and impacted the officials' ability to ensure the safe and efficient operation of the VA facilities.  Though the Court accepts, on this occasion, Plaintiff's allegation that Darling fabricated the charges against him and exaggerated her fears for her safety based on personal animus for him, it must nevertheless conclude that Darling's reporting of Plaintiff's alleged assault was also based in part on her desire to serve the needs of her employer.  The Court reaches this conclusion based on the contents of the reports themselves which reveal assurances from VA officials to Darling that she would be protected and a documented response from her that she would stay at work and continue to serve the needs of the VA's clients despite having lodged charges against Plaintiff.  Implicit in this response is Darling's concern that the mission of her employer not be affected by anything that was happening with her personally.

Because Plaintiff has failed to carry his burden of proving that Darling was acting outside the scope of her employment when she filed the subject reports with VA, the

**No. 1:02CV82-MMP/AK**

motion to substitute should be granted, and the United States should be substituted for

Dr. Darling in Count Two of the Fifth Amended Complaint.

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion for

substitution, Doc. 145, be **GRANTED**, and that the United States of America be

**SUBSTITUTED** as the proper party for Dr. Catherine Darling in Count Two of the Fifth

Amended Complaint.

**IN CHAMBERS** at Gainesville, Florida, this <u>30th</u>    day of August, 2005.

s/ A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:02CV82-MMP/AK**